UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS FLOYD,

    Plaintiff,

v.                                              Case No. 8:17-cv-01729-T-02TGW

JULIE JONES, Secretary, Florida
Department of Corrections, DANIEL CONN,
BENEDO EDOUARD, ROBERT SMITH,

    Defendants.
_____/

## ORDER

This matter comes to the Court on motions to dismiss Plaintiff's Amended Complaint from Defendant Jones, Dkt. 51, Defendant Conn, Dkt. 72, and Defendant Smith, Dkt. 77. Plaintiff Floyd, who is pro se, has filed responses in opposition to Defendant Jones's and Defendant Conn's motions, Dkts. 66, 84. The Court **GRANTS** Defendants' motions to dismiss. Plaintiff's Motion Requesting Discovery, Dkt. 83, filed on November 1, 2018 is denied as moot.

## BACKGROUND

For purposes of ruling on a 12(b)(6) motion to dismiss, the Court accepts as true the allegations of Plaintiff's Amended Complaint and applies the liberal

pleading standard for pro se litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Plaintiff is an inmate of the Florida Department of Corrections ("FDOC") at Hardee Correctional Institution. Dkt. 49 ¶ 57. Defendant Jones is Secretary of FDOC. *Id.* ¶ 5. Wexford Health Source Inc. ("Wexford") contracted with FDOC to provide health care to inmates. *Id.* ¶ 4. Defendant Conn is President of Wexford. *Id.* ¶ 17. Defendant Smith is Wexford's regional utilization management physician and Defendant Edouard is a medical doctor with FDOC or Wexford. *Id.* ¶ 27-28.

In 2010, Plaintiff injured his left foot playing sports at Hardee. *Id.* ¶ 58. He had an x-ray which was negative. *Id.* He injured the foot again in 2013 and a nurse gave him ibuprofen. *Id.* ¶ 59. A painful lump subsequently formed. *Id.* ¶ 60. An attending physician's assistant suspected Morton's Neuroma ("MN") and requested an MRI. *Id.* ¶¶ 60-61. Wexford denied that request and instead an ultrasound was conducted on October 14, 2013. *Id.* ¶ 61. The ultrasound "could not show damage" and "poorly visualized" Plaintiff's injury as MN. *Id.* ¶ 42.

On October 23, 2013, Plaintiff saw the physician's assistant who noted Plaintiff's pain and considered possible treatment, including an operation. *Id.* ¶ 63. In 2014, Defendant Dr. Edouard requested an MRI to rule out MN which was also denied. *Id.* ¶¶ 64-65. Defendant Smith advised the doctor to monitor Plaintiff in-house and use an alternate plan. *Id.*

Plaintiff exhausted the grievance and appeal system but his requests were denied. *Id.* ¶¶ 66-68. In 2015, he went to sick call for the pain multiple times and was advised he would be seen. *Id.* ¶ 73. Based on the stamps provided on the sick call sheets, it appears he was seen. Dkt. 49-1. In early 2016, Plaintiff received Tramadol which did little to ease his pain. Dkt. 49 ¶ 74. He continued to go to sick call. *Id.* ¶ 75.

In September 2016, he started to receive medicinal injections into the neuroma which temporarily improved his condition. *Id.* ¶ 77. He went to a physician's assistant once more complaining of foot pain. *Id.* ¶ 78. In January 2017, Plaintiff received therapeutic shoes. *Id.* ¶ 79. He received another X-ray on his foot in February 2017 which was negative. *Id.* ¶¶ 80-81. In May of the same year Dr. Edouard scheduled shots that helped. *Id.* ¶ 84. In June, Dr. Edouard administered injections into the neuroma and tried to dislodge the lump, but it was connected to the bone. *Id.* ¶ 85. Plaintiff asked for an operation to remove it, but Dr. Edouard said "not at this time." *Id.* ¶ 85. When Plaintiff saw Dr. Edouard again the swelling and pain subsided, though the lump was still tender. *Id.* ¶ 86.

Plaintiff sues Defendants under 42 U.S.C. § 1983 for violating his Eighth Amendment right to be free of cruel and unusual punishment. He seeks compensatory damages of $500,000 and punitive damages of $250,000 against

each Defendant, court costs, and a "preliminary and permanent injunction ordering Dr. Edouard to adequately and timely treat Plaintiff's MN, or send to a specialist to resolve." *Id.* at 14. In response, Defendants raise a number of affirmative defenses and substantively similar arguments for dismissal.

**LEGAL STANDARD**

Under 28 U.S.C. § 1915, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that [the action] . . . fails to state a claim on which relief may be granted . . . ." § 1915(e)(2)(B)(ii). Similarly, to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted).

When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). Courts may also consider documents attached to a motion to dismiss if they are (1) central to the plaintiff's claim; and (2)

4

undisputed or, in other words, the "authenticity of the document is not challenged." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (citations omitted).

## DISCUSSION

Plaintiff cannot establish a claim under 42 U.S.C. § 1983. "Medical treatment violates the Eighth Amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (citation omitted).

To prevail, Plaintiff must demonstrate (1) "an objectively serious medical need that, if left unattended, poses a substantial risk of serious harm; and (2) that the response made by public officials to that need was poor enough to constitute an unnecessary and wanton infliction of pain, and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Harris v. Leder*, 519 F. App'x 590, 595-96 (11th Cir. 2013) (unpublished) (internal quotation marks and citations omitted).

The Court finds that, viewing the allegations of the complaint in a light most favorable to the claimant, Plaintiff's foot condition did not present a serious

medical need and that, even if it did, the FDOC medical staff's response did not constitute deliberate indifference to that need.

I.   Plaintiff's foot condition did not present a serious medical need.

This case presents the novel question in this circuit of whether a suspected MN can rise to the level of a serious medical need. Generally, objectively "serious medical needs are those requiring immediate medical attention." *Youmans v. Gagnon*, 626 F.3d 557, 564 (11th Cir. 2010) (internal quotation marks and citation omitted). The "medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (alteration in original) (citation omitted); *see also Kelley v. Hicks*, 400 F.3d 1282, 1284 (11th Cir. 2005) (the risk to health must be so "grave" as to "violate contemporary standards of decency").

Courts, for example, have found serious medical needs in cases of severe asthma, *Adams v. Poag,* 61 F.3d 1537, 1539-41, 1543 (11th Cir. 1995), a "serious and painful" broken foot, *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990), a deteriorating leg that collapsed under the claimant and had caused him to "scream[] in pain," *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989), or in cases of recent trauma, *see, e.g.*, *Barfield v. Brierton,* 883 F.2d 923, 938 (11th Cir. 1989) (genuine issue of fact for physical and sexual assault); *Thomas v. Town of*

6

*Davie,* 847 F.2d 771 (11th Cir. 1988) (automobile accident); *Aldridge v. Montgomery,* 753 F.2d 970, 972-73 (11th Cir. 1985) (one and a half inch cut above the eye that bled for two and a half hours). By contrast, courts have found no serious medical need from "pseudofolliculitis barbae" or "shaving bumps," *Shabazz v. Barnauskas,* 790 F.2d 1536, 1538 (11th Cir. 1986), or high blood pressure and continuing pain from a three-year-old shoulder injury. *Dickson v. Colman,* 569 F.2d 1310, 1311 (5th Cir. 1978).

Defendants compare MN to arthritis which courts have sometimes found does not present a serious medical need. *See, e.g.*, *Anciza v. Morales*, No. 4:09cv483-RH/WCS, 2011 WL 2174135, at *4-5 (N.D. Fla. Apr. 13, 2011) (no serious medical need where chronic arthritis was treated with inflammatory medications); *Smith v. DeBruyn*, 91 F.3d 146 (7th Cir. 1996) (unpublished) (noting that although arthritis may be very painful, it is not a serious medical need). Certain types of arthritis, however, can in fact give rise to a serious medical need. *Dittmer v. Bradshaw*, No. 12-81309-CV, 2015 WL 471371, at *5 (S.D. Fla. Feb. 4, 2015) (citations omitted) (osteoarthritis and rheumatoid arthritis are a serious medical need).

The Court notes that MN, caused by the growth of tissues or neuromas wrapped around nerves, may progress to "a constant burning sensation [that] may

radiate to the tips of the toes" and a person "may also feel as if a marble or pebble were inside the ball of the foot." Dkt. 1-4 at 4. There is no dispute that MN is a painful condition, nor is there any suggestion that it requires medical assistance or that without treatment the condition will manifest into something worse, much less create a "health risk so grave as to violate contemporary standards of decency." The Court, therefore, finds that MN is not a serious medical need as defined in Eighth Amendment cases.

II.  FDOC medical staff's response was not insufficient to any such need.

Even if there were a serious medical need, FDOC medical staff's response was not poor enough to constitute an unnecessary and wanton infliction of pain.

Importantly, "[d]isagreement over a matter of medical judgment does not constitute cruel and unusual punishment." *Leder*, 519 F. App'x at 596. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Poag,* 61 F.3d at 1545 (internal quotation marks and citations omitted); *see also Leonard v. Dep't of Corr. Fla.*, 232 F. App'x 892, 895 (11th Cir. 2007) (finding no violation where plaintiff was denied therapeutic shoes to treat his arthritis and alleged this caused further injury); *Sult v. Prison*

*Health Servs. Polk Cnty. Jail*, 806 F.Supp. 251, 252-53 (M.D. Fla. 1992) (no violation where, notwithstanding denial of MRI, plaintiff had been examined by medical personnel and prescribed medication).

This is precisely the case before the Court. Based on Plaintiff's own allegations, FDOC medical staff were diagnosing and treating his condition, though not in the manner Plaintiff would have preferred. Plaintiff received an initial x-ray, Dkt. 49 ¶ 58, an ultrasound, ¶ 61, treatment from Dr. Edouard, ¶ 64-65, Tramadol, ¶ 49, medicinal injections into the neuroma, ¶ 77, therapeutic shoes, ¶ 79, another X-ray, ¶ 80, additional shots that helped, ¶ 84, and injections into the neuroma and an attempt by Dr. Edouard to dislodge the lump, ¶ 85. Furthermore, there is no allegation that Defendant was not seen by medical staff each time he went to sick call. *Id.* ¶ 73; Dkt. 49-1 at 9. Plaintiff's chronology in his complaint suggests the ailment is improving, Dkt. 49 ¶ 86, and he states "his foot injury is much better than before," Dkt. 66 at 2.

Indeed, though the Court is hesitant to weigh in on medical decisions, the very materials that Plaintiff relies on to define MN observe that an MRI "cannot accurately identify this disorder," and that "[i]njecting the tender spot in the foot . . . and wearing orthotics may relieve the symptoms." Dkt. 1-4 at 4. It goes on to note that "[i]f these treatments do not help, surgical removal of the neuroma often

9

relieves the discomfort completely but may cause permanent numbness in the area." *Id.* Here, as Plaintiff admits, the injections and therapeutic did help.[1]

While a delay in providing medical treatment can constitute deliberate indifference, *Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976), the only delay here was in Plaintiff receiving the therapeutic shoes and the most recent injections; he was nonetheless receiving treatment prior to this. Additionally, Plaintiff "admits his foot injury is much better than before" and does not allege that any delay has worsened the condition. Dkt. 66 at 2. This does not rise to the level of a "detrimental effect of delay" that Plaintiff must prove. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994), *overruled in part by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002).

In the absence of a serious, Eighth Amendment, medical need or deliberate indifference in response to such a need, Plaintiff fails to state a claim for which relief can be granted under 42 U.S.C. § 1983 and dismissal is therefore appropriate. Defendant's request for injunctive relief similarly falls short. *See*

---

[1] Plaintiff's assertion that the law requires an "informed" medical judgment or diagnosis similarly misses the mark. For this proposition, Plaintiff cites *Tillery v. Owens*, 907 F.2d 418, 428 (3d Cir. 1990), a case that concerned double-celling in a prison, not medical treatment in a particular case. The instant case is also distinguishable from *Dittmer v. Bradshaw*, No. 12-81309-CV, 2015 WL 471371 (S.D. Fla. Feb. 4, 2015) where the complaint contained factual allegations that the attending doctor explicitly stated he refused to order an MRI, delayed submitting a referral form, and that Wexford avoids treating inmates for reasons not based in medicine. 2015 WL 471371, at *6. It is not enough for Plaintiff to baldly conclude that decision-making was for purely economic reasons without any supporting allegations.

*GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc.*, 131 F. Supp. 3d 1291, 1302 (M.D. Fla. 2015) (citation omitted) ("[I]t is well-established that injunctive relief is not a proper claim for relief in and of itself, but rather a remedy that is available upon a finding of liability of a claim.").

## CONCLUSION

Based on the foregoing, Defendants' motions to dismiss, Dkts. 51, 72, 77, are **GRANTED**. Plaintiff's Amended Complaint, Dkt. 49, is hereby **DISMISSED**. Plaintiff's Motion Requesting Discovery, Dkt. 83, is denied as moot.

**DONE AND ORDERED** at Tampa, Florida, on November 9, 2018.

                               _____*/s/ William F. Jung*_____
                               **WILLIAM F. JUNG**
                               **UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, pro se